# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| LINDA ROPER RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:19-cv-01032-JHE |
| ) | |
| BESSEMER BOARD OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff Linda Roper Richardson ("Richardson") initiated this action asserting various civil rights and employment discrimination claims against Defendants Bessemer Board of Education (the "Board"), its members in their individual and official capacity, and its (former) superintendent Keith A. Stewart ("Dr. Stewart" or the "Superintendent") in his individual and official capacity. (Doc. 1). The Board and its members moved to dismiss (doc. 15), as did the Superintendent. (doc. 19). The undersigned entered a Memorandum Opinion and Order granting in part and denying in part the motions to dismiss and instructing Richardson to file an amended complaint consistent with the memorandum opinion. (Doc. 30).

Richardson then filed an amended complaint (doc. 31), and, again, the Board and its members moved to dismiss (doc. 33), as did the Superintendent. (doc. 34). The undersigned entered a Memorandum Opinion and Order granting in part and denying in part the motions to dismiss and instructing Richardson to file a second amended complaint consistent with the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 28).

memorandum opinion. (Doc. 40).

Richardson filed a Second Amended Complaint asserting claims against the Board and Dr. Stewart. (Doc. 43). The Board filed an Answer to the Second Amended Complaint. (Doc. 48). Dr. Stewart moved to dismiss the claims asserted against him in the Second Amended Complaint. (Doc. 49). The undersigned entered a Memorandum Opinion and Order granting Dr. Stewart's motion to dismiss. (Doc. 54).

The Board, the sole remaining defendant, has now moved for summary judgment as to the remaining claims asserted against it. (Doc. 61). The motion is fully briefed (docs. 62, 63, 67, & 70) and ripe for review. For the reasons stated below, the undersigned finds there is no genuine issue of material fact and the Board is entitled to judgment as a matter of law. The motion for summary judgment (doc. 61) is due to be **GRANTED**.

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts[2]

### A. Richardson's Appointment to the Director Position

The Board appointed Richardson as the Director of Attendance, School Safety and Security in July 2015, and placed her at step zero of the director's pay schedule. (Doc. 63-17 at 13 (49:1-5)). At the time of her appointment, Richardson worked as an assistant principal and possessed an Ed.S. and Master's degrees. (Doc. 63-1 at 3-4 (9:1-10:23)). Richardson does not have a doctoral degree. (*Id.* at 4 (10:22-11:5))

### B. The Board's Procedure for Salary Schedule and Step Placement

Public school employees in Alabama are paid on the basis of officially approved salary

---

[2] Citing Federal Rule of Civil Procedure 56(c)(4), Richardson urges the Court to "disregard Ms. Stewart's affidavit" because "most of her affidavit is none [sic] factual and/or contends to make legal conclusions." (Doc. 67 at 1-2). This provision provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on matters stated." FED. R. CIV. P. 56 (c)(4). Richardson's general attack lacks specificity and is insufficient for the undersigned to strike Ms. Stewart's affidavit. As a general matter, Ms. Stewart attests she has served as Chief School Financial Officer ("CSFO") for the Board since February 2018, and in that position has the general responsibility to exercise administrative oversight of the Board's financial operations, including development and vision of its general and special budgets, its expenditures, its accounting and reporting functions and obligations, its payroll related operations, compliance with applicable laws, regulations, and policies, and other duties related to fiscal management as prescribed by the Alabama School Fiscal Accountability Act, Alabama Code § 16-13A-1. (Doc. 63-24 at ¶ 1). Prior to that appointment, Ms. Stewart held the position of Business Affairs Supervisor for the Board from January 2007 until her appointment as CSFO. (*Id.* at ¶ 2). In that role, Ms. Stewart supported some of the CSFO's duties and had administrative responsibilities for overseeing the Board's accounts payable, local school accounting, and payroll operations. (*Id.*). These facts provide an ample foundation such that Richardson's attack on the affidavit as a whole is unfounded. To the extent Richardson makes specific challenges to discrete portions of the affidavit, those challenges will be considered.

schedules.³ (Doc. 63-24 at ¶ 4). Salary schedules are pay scales that contain successive levels or "steps" reflecting an increased rate of compensation that is earned as the employee progresses to a higher step on the schedule—typically on an annual or other regular basis. (*Id.*). Additional salary enhancements are established based on attainment of advanced academic credentials, such as a doctoral degree. (*Id.*). Richardson did not possess an advanced degree of the kind that would have entitled her to additional compensation when she was appointed to the director position. (*Id.*; doc. 63-1 at 3-4 (9:1-11:1)). Step increases are capped or "topped out" when the highest step on the salary scheduled is attained. (Doc. 63-24 at ¶ 4).

In Bessemer, as elsewhere, separate salary schedules are adopted for different categories of employment (e.g., teachers, principals, supervisors, directors).⁴ (Doc. 63-24 at ¶ 5). When she was appointed to the position of Director of Attendance, Safety, and Security, Richardson was placed on the directors' salary schedule. (*Id.*).

At the time of Richardson's appointment, and historically, the Board's standard practice was to place newly hired employees and transferred employees with no prior experience in a new job classification on the initial step ("Step 0") of the appropriate salary schedule.⁵ (Doc. 63-24 at ¶ 6).

---

³ Although Richardson responds that the facts in this paragraph are "[d]enied as stated[,]" she fails to offer any evidence to dispute them and does not show how they are unsupported by the evidence offered. (*See* doc. 67 at 2).

⁴ Again, although Richardson responds that the facts in this paragraph are "[d]enied as stated[,]" she fails to offer any evidence to dispute them and does not show how they are unsupported by the evidence offered. (*See* doc. 67 at 2).

⁵ Richardson responds that this statement is "[d]enied" and that it is "factually untrue." (Doc. 67 at 3). She cites no evidence in support of this assertion and, therefore, does not adequately dispute this fact.

The Board states that it followed this practice in Richardson's case, as she had no prior experience as a director either in the Bessemer system or in an equivalent position outside the school system. (Doc. 63-24 at ¶ 7; doc. 63-1 at 3-5 (9:1-11:23, 14:1-15:23)). Had she possessed prior experience as a director, the Board contends it would have credited Richardson with her years of service in that capacity and placed her on the directors' salary schedule at a corresponding step on the salary schedule. (Doc. 63-24 at ¶ 7). Instead, Richardson came to the director's position from that of an assistant principal at Jonesboro Elementary School. (*Id.*; doc. 63-1 at 3-4 (10:1-12:23)). As an assistant principal, her compensation was based on the assistant principals' salary schedule, and her experience in that job classification was not transferable to the director's position for purposes of her placement on the directors' salary schedule. (Doc. 63-24 & 7).

Richardson asserts that Dr. Keith Stewart, the previous superintendent of Bessemer City Schools (doc. 63-17 at 3 (7:12-16)), testified that "different methods of placement are used randomly." (Doc. 67 at 3). In support of this assertion, Richardson cites the entirety of Dr. Stewart's 143-page deposition. (*See id.*). The undersigned has not been able to find anywhere in Dr. Stewart's deposition where he says that different methods of placement are used randomly. (*See* doc. 63-17).

Over the years, the Board has been asked to relax the restriction that limits recognition of creditable service to experience within the directors' classification so as to permit service in other administrative roles to be factored into placement on the salary schedule.[6] (Doc. 63-24 at ¶ 8).

---

[6] Again, although Richardson responds that the facts in this paragraph are "[d]enied as stated[,]" she fails to offer any evidence to dispute them and does not show how they are unsupported by the evidence offered. (*See* doc. 67 at 3).

The Board has declined to do so.  (*Id.*).

### C. Exception to the Board's Standard Practice or "One Step Up" Policy

According to the Board, the only exception to the standard placement protocol applies to situations where its strict application would require the newly hired or transferred employee to accept a reduction in pay from the salary that the applicant had earned in their previous position.[7] (Doc. 63-24 at ¶ 9).  The Board reasons that strict enforcement of this rule would discourage qualified candidates from applying for or accepting employment with the Board and limit the pool of qualified applications for a position.  (*Id.*).  Accordingly, so as not to disincentivize qualified applicants whose current compensation exceeds the other applicable step level within the new position, the Board's practice has been to initially place such appointees at a level that is one step above the rate of pay received by the appointee in their previous position.  (*Id.*).

The Board has followed this practice as to employees hired from within and from outside the system.  (Doc. 63-25 at ¶ 10).  The Board believes this is what Richardson points to as evidence of discrimination and contends it (the Board) was not crediting an applicant with a particular number of years of service or experience but following its policy to avoid pay cuts for individuals

---

[7] Again, although Richardson responds that the facts in this paragraph are "[d]enied as stated[,]" she fails to offer any evidence to dispute them and does not show how they are unsupported by the evidence offered. (*See* doc. 67 at 3).  Richardson asserts that the Board "contradicts itself" by stating that this is the only exception.  (*Id.*).  However, the Board's facts are not contradictory.  (*See* doc. 62 at ¶¶ 2, 4, & 6).

accepting new appointments. (Doc. 62 at ¶ 7).

The Board offers evidence that the increases realized based on this "one step up" policy were relatively modest both in terms of absolute dollars and the percentage increase of the additional compensation in relation to the employees' previous salaries.[8] (Doc. 63-24 at ¶ 11). In fact, there is no evidence that any were as sizeable as the difference Richardson realized when she was elevated from an assistant principal to the director's position. (*Id.*). Richardson's salary went from $ 65,441.00 to $ 73,578.00—a difference of $ 8,137.00, and a percentage increase of almost 12.5%. (*Id.*). Additionally, there is no evidence that another employee, who was placed on a higher step based on the no-reduction-in-pay policy, realized a comparable gain in either terms of a percentage pay increase or in absolute dollars. (*Id.*).

### D. Alleged Comparators and Other Employees

The Board offers evidence that Richardson's placement on the salary schedule was not driven by race, age, or gender discrimination.[9] (Doc. 63-24 at ¶ 12). Specifically, the Board contends there is no discernible pattern based on race, gender, or age with the employees Richardson identifies in her complaint, other filings, and in her deposition as having received more favorable treatment with respect to salary schedule placement. (*Id.*). The Board offers evidence, specifically, a spreadsheet chart attached to CSFO Stewart's affidavit, that the ostensibly comparable placements were made under different circumstances and based on objective considerations that did not apply to Richardson. (Doc. 63-24 at ¶ 13; doc. 63-26).

To the extent Richardson complained about her pay scale placement to former superintendent Dr. Stewart, Dr. Stewart could have recommended approval of a salary adjustment, but did not because he was advised by legal not to do so. (Doc. 63-17 at 35 (136:6-11)). Richardson's assertion that other individuals were credited with such experience and education is wholly unsupported by the evidence she cites. (*See* doc. 67 at 5 (citing 63-17 at136:1-23)).

Had she been credited for her years of service as an assistant principal (as she contends she was entitled), Richardson would have begun her appointment as a director closer to the highest attainable step in the schedule rather than the beginning. (Doc. 63-24 at ¶ 17). There is no evidence any of the Board employees Richardson identifies as comparators were placed on the salary schedule by simply being credited with unrelated years of experience or service. (*Id.*). If the Board would have done that for Richardson, it would have been a deviation from the standard, objective, non-discriminatory practice. (*Id.*). Richardson's assertion that former superintendent Dr. Stewart "testified to the contrary" (doc. 67 at 5) is not supported by the evidence. Dr. Stewart testified that Richardson was not credited with her years of experience as an assistant principle when she became a director because "she didn't have any experience as a director" and "that was the process that the Board used at the time." (Doc. 63-17 at 13 (48:7-49:4)). This is consistent with the Board's position.

---

[8] Although Richardson states the facts in this paragraph are "[d]enied in part[,]" she cites no evidence to create a disputed fact. To the extent she points out that the Board did not identify anyone fitting this description, she is reminded she carries the burden in this case.

[9] Richardson "[d]enies" the facts in this paragraph, but (again) presents no evidence to create a dispute. (Doc. 67 at 4).

9

On January 27, 2021, after briefing on this motion closed,[10] and without seeking leave of court, Richardson filed a supplemental affidavit. (Doc. 72). In this affidavit, Richardson attests that, on December 15, 2020, the Board hired Jameka Thomas for the Director of Curriculum and Instruction Position. (*Id.* at 1). Thomas had been an assistant principal at Bessemer City Middle School prior to this appointment and a teacher before that. (*Id.*). In the affidavit, Richardson attests that the Board put Thomas on Step 8 with a starting salary of $87,821.00, and she has since received a raise to $89,613.00, upon receiving her doctorate. (*Id.*; doc. 72-1 at 1-2). Richardson contends the Board crediting Thomas with eight years of administrative experience is proof of age discrimination, since she was placed at Step 0 even though she had similar experience. (Doc. 72 at 1).

---

[10] After the undersigned granted Richardson's motion for an extension of time, Richardson's response brief was due December 11, 2020. (Doc. 66). After the undersigned granted the Board's motion for an extension of time, the Board's reply brief was due December 31, 2021. (Doc. 69). Both briefs were filed on the day they were due. (Docs. 67 & 70).

The Board moves to strike Richardson's supplemental affidavit as untimely, irrelevant, and made without personal knowledge. (Doc. 74). Richardson opposes the motion to strike (doc. 76), and the Board has filed a reply. (doc. 78). The Board's assertion that Richardson's supplemental affidavit is untimely is correct. Richardson's response, including any evidentiary materials, was due no later than December 11, 2020. (*See* doc. 66). The supplemental affidavit was filed on January 27, 2021 – over six weeks after the deadline and Thomas's appointment. (*See* docs. 72). Richardson offers no excuse for this delay. Richardson also did not request permission to file a sur-reply or additional evidence, which the undersigned could have considered. For these reasons, the motion to strike (doc. 74) is **GRANTED**.

Even if the undersigned were to consider Richardson's untimely supplemental affidavit, Thomas is not a proper comparator. The supplemental affidavit does not address actions the Board took during the relevant time period. This action is about Richardson's appointment on July 15, 2015, approximately five-and-a-half years prior to the employment action referenced in the supplemental affidavit. The Board explains that Thomas's salary schedule placement was based on a Fall 2020 interpretation of state legislation.[11] (Doc. 74 at 3). Furthermore, like Richardson, Thomas is a black woman over the age of forty. (*Id.*). Thus, any alleged disparate treatment would not show prejudice to Richardson based on a protected characteristic.

---

[11] The Board explains that it reviewed Richardson's compensation to determine whether a salary adjustment would be due under the legislation in question. (Doc. 74 at 3 n.3).

At all times pertinent, the Board has had an official policy prohibiting all forms of unlawful race, gender, and age-based discrimination and affirming its commitment to equal employment opportunity. (Doc. 63-24 at ¶ 15; doc. 63-25).

### III. Analysis

Richardson, a fifty-seven-year-old black woman (doc. 43 at ¶ 9), contends that, after the Board selected her to be the Director of Attendance, Safety, and Security on July 16, 2015, the Board failed to credit her for her appropriate years of service and experience, which caused her to make less money than she was entitled. (*Id.* at ¶ 11). Richardson contends the Board credited other employees, including white people, men, and/or employees who were under forty-years-old, commensurate with their education, training, and experience. (*Id.* at ¶12). Richardson assets race, sex, and age-based discrimination claims pursuant to the Equal Protection Clause of the Fourteenth Amendment (brought pursuant to 42 U.S.C. § 1983), Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) ("Title VII"), and the Age Discrimination in Employment Act of 1967 ("ADEA"). (*See id.*).

Title VII and § 1981 claims "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc*., 161 F.3d 1318, 1330 (11th Cir.1998). Therefore, the undersigned "explicitly address[es] the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." *Id*. Claims of age discrimination brought pursuant to the ADEA are evaluated in a similar way. *See Bibby v. Drummond Co., Inc.*, 818 F. Supp. 325, 327-28 (N.D. Ala. 1993). Generally, "[a] plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir.2008). Where, as here, a plaintiff offers only circumstantial

evidence, the court evaluates the sufficiency of his claim through the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case. *Id.* at 802. A plaintiff establishes a prima facie case of disparate treatment by showing: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside her class more favorably; and (4) she was qualified to do the job. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).

"The successful assertion of a prima facie case then creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff." *Rioux*, 520 F.3d at 1275 (internal quotation marks and citations omitted). The burden then shifts to the employer to produce evidence that it had a legitimate non-discriminatory reason for the challenged action. *Id.* If the employer satisfies its burden, the burden shifts back to the plaintiff to "show that the proffered reason really is a pretext for unlawful discrimination." *Id.* (internal quotation marks and citations omitted).

### A. There is No Prima Facie Case of Discrimination or Pretext

To establish a prima facie case, among other things, a plaintiff must offer evidence that her employer treated similarly situated employees outside of her class more favorably. In her brief, Richardson points to four individuals she contends were credited with years of service or education to increase their compensation: Mary Burrows, Quinerri Mitchell, Reginald Ware, and Edward Cox. (Doc. 67 at 9). Richardson cites former Superintendent Dr. Stewart's deposition in support. (*See id.*).

As to Mary Burrows, Dr. Stewart testified that "when she was placed on the salary schedule it was based off her salary. She came from a – from another district and her salary – we had to

find the closest to where her salary was to match her on the salary." (Doc. 63-17 at 11 (39:17-40:9)). Dr. Stewart's testimony does not support Richardson's assertion that Burrows was credited for years of service or education.

Dr. Stewart also testified that "Quinerri Mitchell was a teacher that was promoted to counselor[,]" that "Reginald Ware was a contract principal[,]" and that "Edward Cox was a Director of Special Education." (Doc. 63-17 at 11 (41:16-23)). He then explained as follows:

> Only one that I, to my knowledge, was – Quinerri Mitchell, because she was given – she was on the teacher salary schedule. And she transferred from a nine-month contract to a twelve month contract. And so that, you know, increased her pay.
>
> But everybody else was a contract principal or they came from outside of the system. And based on their respective salaries – salary were [sic] placed on the salary schedule.

(*Id.* at 12 (42:9-20)). Again, nothing in Dr. Stewart's testimony shows that any of these people were credited with experience or education in the way Richardson complains.

Likewise, Richardson alleges that out of the six directors that the Board hired within the past two years, she is the only one that was not given credit for experience and put at Step 0. (*See* doc. 67 at 11). Assuming that this assertion is true, she has not pointed to any evidence that any of those individuals who were placed above a Step 0 were placed there based on being credited with non-director experience or for education below the doctoral level.

Richardson fails to offer evidence that her employer treated similarly situated employees outside of her class more favorably; i.e., that the Board credited someone with non-director experience or education below the doctoral level.

Even if she could establish that the board treated similarly situated employees outside of her protected class more favorably (and state a prima facie case of discrimination), Richardson

would have to "show that the proffered reason really is a pretext for unlawful discrimination." *Rioux*, 520 F.3d at 1275. There is no such evidence in this case. The Board has presented evidence explaining its pay scales and its policy for exceptions. Richardson fails to produce evidence of an individual who was credited with non-director experience (or any experience unrelated to the new position) or a degree below a doctorate. Instead, Dr. Stewart's testimony establishes that most of the individuals Richardson points to were hired from outside of the district and placed on the pay scale under the "One Step Up" policy. This does not create a question of fact as to discrimination sufficient to preclude summary judgment.

### B. No Convincing Mosaic

A plaintiff does not have to establish a prima facie case under the *McDonnell Douglas* framework to present a triable claim of unlawful discrimination if there is a triable issue of discriminatory intent presented through a "convincing mosaic" of circumstantial evidence from which a reasonable jury could find intentional discrimination. *Smith v. Lockheed-Martin*, 644 F.3d 1321, 1328 (11th Cir. 2011). No such evidence has been presented in this case.

### IV. Conclusion

Richardson has failed to point to any evidence of discrimination. Because there is no genuine issue of material fact and the Board is entitled to judgment as a matter of law, the motion for summary judgment (doc. 61) is **GRANTED**. A separate order will be entered.

DONE this 2nd day of September, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE